UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARCUS A. ARMSTEAD, Plaintiff, | ) | |
| v. | ) | No. 1:23-cv-02079-JRO-MKK |
| BROWN, Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Marcus Armstead filed this civil rights action alleging he was subjected to excessive force by Pendleton Correctional Facility Sgt. Ashley Brown when she deployed chemical agent in his cell. Sgt. Brown has moved for summary judgment. Dkt. [30]. For the reasons below, that motion is **GRANTED**. While the Court concludes that a reasonable jury could find Sgt. Brown violated Armstead's Eighth Amendment rights, she is entitled to qualified immunity.

## I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-

finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Armstead failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a nonmovant fails to respond to a motion for summary judgment, the movant 'still [has] to show that summary judgment [is] proper given the undisputed facts,' with those facts taken as usual in the light most favorable to the nonmovant." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)).

## II. FACTUAL BACKGROUND

Because Defendant has moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Armstead and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572.

On August 22, 2023, Armstead was experiencing a mental health crisis and tried to hang himself in his cell. Dkt. 31-1 at 8-9. He tied a sheet to his cell door and then tied it around his neck and lost consciousness. *Id.*

A soundless video shows Sgt. Brown responding to the incident and walking down the hallway of a cell block towards Armstead's cell. Another officer standing in front of Armsted's cell gestures into the cell while someone dressed in scrubs (presumably medical staff) watches while holding a file folder. Dkt. 31-2 at 0:01-0:11. The cell door is made of a thick, permeable metal mesh screen with a hand cuff port halfway down the door.

Armstead had already tied his bedsheet to the mesh screen of the door by the time Sgt. Brown arrived. *See id.* at 3:00 (showing a bedsheet tied to the door); dkt. 31-1 at 8–9. Upon reaching the cell door, Sgt. Brown spends the next seven seconds grabbing and poking at the mesh of the cell door in different places and then placing her hands into the cuff port, all in an apparent attempt to "untie [Armstead]'s makeshift noose" while he is hanging from the cell door. Dkt. 31-2 at 0:14–0:21. During this time, Sgt. Brown's face is mostly blocked by the other officer, and it is difficult to see if her lips are moving. *Id.* Unsuccessful at loosening the bedsheet, Sgt. Brown takes a step back and looks at the cell door and briefly pauses. *Id.* at 0:22–0:24. She then takes a step toward the door while

moving her head downward and then takes a step back. *Id.* at 0:24–0:25. At this time, she takes out a can of oleoresin capsicum ("OC") spray (i.e., pepper spray or mace) and looks at her colleague, who shrugs. *Id.* at 0:28–0:31. Sgt. Brown then steps forward, sticks her hand through the cuff port of Armstead's cell, and deploys the OC Spray for one to two seconds. *Id.* at 0:32–0:34. The video does not clearly show Sgt. Brown giving verbal commands but supports Brown's statement of undisputed fact that attempts were made to "get Plaintiff's attention."[1] Because Armstead was unconscious, he did not respond. Dkt. 31-1 at 11, 15. The record is unclear whether Sgt. Brown knew Armstead was unconscious at the time.

After spraying Armstead's cell, Sgt. Brown, the other officer, and the medical staff member waited for assistance to arrive. Dkt. 31-2 at 0:35–1:55. Several other officers soon arrived and, assisted by Brown, spent approximately fifty-three seconds poking and pulling at the sheet attached to the cell mesh screen door (with the assistance of hooks that are inserted through the mesh screen) before eventually succeeding in removing the sheet from Armstead's

[1] Defendant's version of facts states, "*After several attempts to verbally get Plaintiff's attention*, Brown briefly deployed the OC spray for roughly 1-2 seconds through the cuff port." Dkt. 32 at 2 (emphasis added). The Court has reviewed the video. The point at which Brown moves toward the door while moving her head slightly downward is an act consistent with someone trying to speak to another person on the other side of a door. But the Court cannot confirm without any sound. The Seventh Circuit has cautioned against relying too heavily on a video at summary judgment, especially as here when the video has no audio. *See Kailin v. Village of Gurnee*, 77 F.4th 476, 481 (7th Cir. 2023) (collecting cases where video was not dispositive and noting that "[i]t should be considered a rare case where video evidence leaves no room for interpretation by a fact finder.").

neck, pulling some of the bedsheet through the mess door, opening the door, and carrying Armstead out of his cell. *Id.* at 2:00–3:11.

Armstead testified at his deposition that he recalls regaining awareness on the ground near the showers. Dkt. 31-1 at 9–11. When he woke up, he felt burning on his face, chest, and ear from being sprayed with OC spray. *Id.* at 12–14. Armstead was provided "an OC treatment, basically just cleaning the stuff out." *Id.* at 13. He experienced pain and burning from the spray for one or two weeks because the chemicals were not cleared from his cell. *Id.* at 14. He continues to discuss the episode with his therapist. *Id.* at 16.

## III. DISCUSSION

Sgt. Brown argues that she did not violate the Eighth Amendment, and that even if she did, she is protected by qualified immunity.[2]

### A. Eighth Amendment

The Eighth Amendment protects inmates from cruel and unusual punishment, including excessive force by prison officials. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). This rule does not bar *de minimis* force unless the force is "of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37−38 (2010) (per curiam) (citation omitted). Even if the force applied is not *de minimis*, it remains permissible if used "in a good-faith effort to maintain or restore discipline," *McCottrell*, 933 F.3d at 664 (citation omitted), particularly when the situation "remain[s] dangerous and volatile," *id.*

[2] Because the Court grants summary judgment on the qualified immunity issues, the Court does not consider Sgt. Brown's third argument that Armstead did not suffer a physical injury.

at 662. But malicious or sadistic force—even if it does not cause a serious injury—is prohibited. *Id.* To distinguish between good-faith and malicious force, courts often consider several factors, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Id.* at 663; *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986). These factors are sometimes referred to as the "*Whitley* factors." These factors are not exhaustive. Ultimately, "[w]hat matters—and what will generally be the decisive factor in cases such as this—is the mindset of the individual applying the force." *Whitaker v. Dempsey*, 144 F.4th 908, 922 (7th Cir. 2025) (quoting *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009)). To survive summary judgment, the record must allow a reasonable jury to find that a defendant "maliciously and sadistically inflicted pain." *Id.*; *accord Whitley*, 475 U.S. at 322 (a plaintiff must present evidence supporting "a reliable inference of wantonness in the infliction of pain.").

"[C]orrectional officers receive special deference in their approach to restoring or maintaining order and discipline." *Smith v. Kind*, 140 F.4th 359, 368 (7th Cir. 2025) (citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979), *Whitley*, 475 U.S. at 322, and *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). "That deference applies . . . to preventative measures intended to avoid future disturbances." *Id.* (citing *Whitley*, 475 U.S. at 322). When it comes to the use of OC spray, " the

appropriateness of the use must be determined by the facts and circumstances of the case" "whether an inmate is locked in his cell or not." *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984). The Seventh Circuit held in *Soto* that it is not cruel and unusual punishment to use mace, tear gas or other chemical agent on an inmate to ensure compliance with officer orders. *Id.* at 1270–71. "[E]xperience and common sense establish that a prison cannot" simply "leave the inmate alone if he chooses not to obey a particular order." *Id.* at 1267. For example, a prison officer may use small amounts of pepper spray to compel a non-responsive prisoner to leave a cell. *Id.* But "it is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Id.* at 1270.

The Seventh Circuit in *Lewis v. Downey* noted that the issuance of a warning is an additional factual consideration when judging the constitutionality of the use of a chemical spray to be considered alongside the *Whitley* factors. 581 F.3d at 477; *see also Soto*, 744 F.2d at 1270 ("The 'use of the substance (tear gas) in small amounts may be a necessary prison technique if a prisoner refuses *after adequate warning* to move from a cell or upon other provocation presenting a reasonable possibility that slight force will be required.'" (emphasis added) (quoting *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979)). Indeed, the Seventh Circuit has "approved the use of chemical agents, including mace and tear gas, 'when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners[,]'" though it has cautioned that the "force could not be

'exaggerated or excessive' *and should generally follow 'adequate warning[s].'"* *Lewis*, 581 F.3d at 479 (emphasis added) (quoting *Soto*, 744 F.2d at 1270–71).

Weighing the various factors and considering the evidence as a whole, a reasonable jury may be able to find that Sgt. Brown's use of OC spray on Armstead was excessive force in violation of the Eighth Amendment.

As to the need for force and the extent of the threat to the safety of staff and inmates, the undisputed facts reflect that Armstead was unconscious when Sgt. Brown deployed OC spray. An unconscious person poses no threat to correctional staff or other inmates. Thus, a reasonable jury could find there was no need for force. *See Abbott v. Sangamon Cnty.,* 705 F.3d 706, 727 (7th Cir. 2013) (recognizing "the general proposition that it is excessive to use such force on a subdued suspect"); *Smith v. Kind*, 140 F.4th 359, 367 (7th Cir. 2025) (denying motion for summary judgment on excessive force claim where officer deployed pepper spray on "a single, unarmed inmate, lethargic after starving himself for more than 50 days" and after officers had entered his cell during previous three days without incident and without force).

Sgt. Brown argues that OC spray was needed to ensure both inmate and officer safety prior to entering the cell of an unrestrained and non-responsive inmate. She argues the threat to safety was high because "[e]ntering a cell with a suspended body poses acute risks to the inmate (ligature tension during door movements) and to staff (unsecured scene, potential sudden movement when consciousness returns)." Dkt. 32 at 7. A reasonable jury may agree or disagree with this argument. While "the use of nondangerous quantities of [OC spray] in

order to prevent a perceived future danger," are permissible, *Soto*, 744 F.2d at 1270, this is a question for the jury to decide.

Sgt. Brown further argues that Armstead's failure to respond to her verbal warnings puts her in line with cases such as *Soto*, in which the Seventh Circuit approved the use of chemical spray for a disobedient inmate who ignored verbal warnings, and distinguishes her actions from cases like *Lewis v. Downey*, 581 F.3d 467, 479 (7th Cir. 2009), that explained when using chemical spray is not appropriate. Dkt. 32 at 9. Sgt. Brown argues her warnings demonstrated an effort to temper the severity of the force. But as previously noted, the video evidence submitted by Sgt. Brown does not clearly show that she gave any verbal warnings. *See Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021) ("Taking the facts in the light most favorable to the non-moving party does not mean that the facts must come only from the nonmoving party. Sometimes the facts taken in the light most favorable to the non-moving party come from the party moving for summary judgment or from other sources."). And, again, to be recalcitrant one has to actually be conscious to disobey an order.

As to the amount of force and extent of the injury, the video reflects that Sgt. Brown deployed the OC spray for no more than two seconds. And Armstead did not suffer serious injury. "But the significance of an injury is not the dispositive factor in an excessive force inquiry; the 'core judicial inquiry' is whether the force was applied in good faith." *Lee v. James*, No. 21-1114, 2021 WL 3197514, *3 (7th Cir. July 29, 2021) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7, 9 (1992)) (reversing grant of summary judgment in favor of correctional

officer defendant where he deployed a single burst of pepper spray on restrained inmate after other guards told him it was unnecessary).

Whether Sgt. Brown "maliciously and sadistically inflicted pain," is also unclear. One the one hand, a jury could reasonably find that Sgt. Brown's actions taken as a whole reflect an effort to provide life-saving aid to Armstead. She first tried to untie his makeshift noose for several seconds before deciding to use the OC spray. The OC spray ensured a controlled environment for officers to safely extract Armstead from his cell. After assistance arrived, Sgt. Brown continued to assist others who successfully extracted Armstead. On the other hand, there is enough evidence from which a reasonable jury could conclude that Sgt. Brown knew Armstead was unconscious and incapable of responding to either OC spray or efforts to extract him, thereby making the use of OC spray obviously unnecessary.

Thus, weighing the relevant factors and considering the ambiguities inherent in the soundless video submitted by Sgt. Brown, the Court cannot grant summary judgment for her on Armstead's Eighth Amendment claim.

**B. Qualified Immunity**

Sgt. Brown also argues she is entitled to qualified immunity. The Court agrees.

"[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "Once the

defense of qualified immunity is raised, a defendant is entitled to dismissal unless a plaintiff" satisfies a two-prong test. *Thomas v. Carmichael*, 164 F.4th 1058, 1067 (7th Cir. 2026). First, he must present "facts showing a constitutional violation." Second, he must identify "law showing his right was 'clearly established' at the time of the alleged violation." *Id.* (7th Cir. 2026) (quoting *Siddique v. Laliberte*, 972 F.3d 898, 902-03 (7th Cir. 2020)). Here, the Court assumes without deciding that Armstead has established an Eighth Amendment violation for Sgt. Brown's use of OC spray. This case turns on the second prong: whether it was clearly established that Sgt. Brown could not deploy OC spray under the circumstances presented in this case.

"The plaintiff bears the burden of demonstrating that a right was clearly established at the time the alleged violation occurred." *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017). Armstead has not identified any other caselaw showing that a clearly established Eighth Amendment right was violated because he has not responded to Sgt. Brown's motion. But the Seventh Circuit has stated that "a plaintiff's failure to cite a case on point is 'not fatal by itself[,]'" and instead the court has a duty to "determine qualified immunity in light of all relevant precedents—both those cited by the parties and those we discover ourselves.'" *Taylor v. Schwarzhuber*, 132 F.4th 480, 487 (7th Cir. 2025) (quoting *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176–77 (7th Cir. 1994)).

The "clearly established" standard ensures "that officials can 'reasonably . . . anticipate when their conduct may give rise to liability for damages.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Anderson v. Creighton,* 483 U.S.

635, 646 (1987)) (alteration in original). To be "clearly established," a constitutional right "must have a sufficiently clear foundation in then-existing precedent" so that "every reasonable officer" would understand its application. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Given this emphasis on notice, clearly established law cannot be framed at a "high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Wesby*, 583 U.S. at 64 (quoting *Anderson*, 483 U.S. at 641). Although "a case directly on point" is not required, "precedent must have placed the . . . constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (cleaned up). Put slightly differently, a right is clearly established only if "every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015).

Sgt. Brown argues that no precedent put her on notice that "an officer violates the Eighth Amendment by deploying a single 1 to 2 second burst of OC through a cuff port, after verbal attempts, at an unresponsive inmate hanging in a cell, immediately followed by summoning assistance, removal, and medical care." Dkt. 32 at 8. The Court notes that Seventh Circuit case law has established that use of force is inappropriate if the plaintiff posed no threat. In *Lewis*, the Court rejected a correctional officer's qualified immunity defense, noting that the plaintiff "was prone on his bed, weakened, and docile" and that "no reasonable officer would think that he would be justified in shooting Lewis with a taser gun."

*Lewis*, 581 F.3d at 479. The Court also recognizes that the Seventh Circuit also has strongly suggested that it would deny qualified immunity if pepper spray were applied to "arrestees [who] were actually subdued." *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 727 (7th Cir. 2013) (citing cases from other circuits). The Seventh Circuit has further said a reasonable jury could find an Eighth Amendment violation for use of OC spray prior to a cell extraction for an inmate who was lethargic and "on the verge of starvation, with no documented history of violence while incarcerated" and "posed no credible threat to officer safety or prison administration." *Smith*, 140 F.4th at 369.[3]

But none of these cases addressed the use of OC spray in the manner and under the circumstances that Sgt. Brown did here: an emergency response to a suicide attempt that required immediate cell extraction and where every other act of the defendant, besides the use of OC spray, reflects an effort to save the inmate's life. The record does not show that Sgt. Brown was in a position to confirm that Armstead was "weakened, and docile," "subdued," or even unconscious—only that Armstead was non-responsive while hanging from his cell and in need of an immediate, emergency cell extraction without delay. There is a dispute of fact as to whether Sgt. Brown provided any warning—verbal or

---

[3] The Court also notes *Stevens v. Poor*, No. 1:22-cv-00660-SEB-CSW, 2024 WL 3621124, at *1 (S.D. Ind. Aug. 1, 2024), which denied summary judgment on an Eighth Amendment claim to a correctional officer who deployed OC spray while a suicidal inmate was unconscious. That case is distinguishable due to several material disputes of fact that precluded summary judgment. *Id* at *7 (noting " a dispute of fact as to the sincerity and seriousness of [plaintiff's] threat of self-harm" and noting "the video sheds no light on the parties' actions because the inside of the cell is not visible"). Moreover, "district court opinions cannot clearly establish a constitutional right because they are not binding precedential authority." *Day v. Wooten*, 947 F.3d 453, 462 (7th Cir. 2020).

otherwise—to Armstead. *See Lewis*, 581 F.3d at 479 (noting that force "including mace and tear gas . . . should generally follow adequate warnings") (internal citations omitted). But even if the Court assumes that Sgt. Brown knew that Armstead was actually unconscious the moment she deployed the OC spray and gave no verbal warning (which would have been pointless anyway), that does not change the analysis because no precedent firmly established her use of force violated Armstead's rights.

In *Smith*, the Seventh Circuit declined to apply qualified immunity to the use of OC spray prior to a cell extraction even when the correctional officer knew the inmate was lethargic, essentially subdued, and had been successfully extracted "without pepper spray and without incident just the day before." 140 F.4th at 368–70. In reaching this conclusion, the Seventh Circuit noted that aside from *Soto*, "[n]o other precedent from our court or the Supreme Court addresses circumstances close enough to those here to defeat qualified immunity." *Id.* at 370. The emergency nature of Armstead's situation distinguishes his case from *Smith*. And the Court has not identified controlling precedent that has been issued since that case was decided. *See also Williams v. Miller*, No. 24 C 50375, 2026 WL 2641754, at *7 (N.D. Ill. Sept. 8, 2026) (distinguishing *Smith v. Kind*, 140 F.4th 359, and granting summary judgment on qualified immunity grounds for the use of OC spray on an unconscious inmate because "[n]o Seventh Circuit or Supreme Court case law addresses the use of a single burst of chemical agent in circumstances in which a correctional

officer is unsure whether an inmate has failed to respond to orders due to a medical emergency or because he intends to ambush officers").

"[T]he Supreme Court has warned against, especially in excessive force cases, reasoning from broad principles when considering whether a right is clearly established for qualified immunity purposes." *Smith v. Price*, --- F.4th ---, 2026 WL 2427614, at *12 (7th Cir. Aug. 19, 2026).[4] Summarizing the Supreme Court's most recent case on qualified immunity, the Seventh Circuit stated that "officers must have been able to 'read' the precedent 'beforehand and known that it proscribed their specific conduct.'" *Id.* at n.11 (quoting *Zorn v. Linton*, 607 U.S. 568, 572 (2006); *accord Smith v. Kind*, 140 F.4th at 370. That is not the case here.

Accordingly, no precedent in the Seventh Circuit exists for forbidding the deployment of OC spray under the circumstances presented in this case. Sgt. Brown is entitled to qualified immunity.

---

[4] The Seventh Circuit recently applied this cautionary word in *Smith v. Price* to grant qualified immunity to a correctional officer who wantonly inflicted pain to an inmate through a "rough ride" in an automobile while that inmate was being transported from surgery. *Id.* The evidence there showed that a reasonably jury could find that the use of force at issue included "intentionally launching a van airborne to jostle an inmate especially vulnerable to pain" while another officer in the van told the inmate "Scream some more. This is funny." *Id.* at *11–12. Even so, no clearly established precedent proscribed this specific conduct because the officers had fastened the inmate's seatbelt, and in the closest analogous case, the officers had not. *Id.* at *14 (citing *Thompson v. Virginia,* 878 F.3d 89, 94–95 (4th Cir. 2017)). As in the *Smith v. Price*, case, the Court has not identified a sufficiently close analogue that would put Sgt. Brown on notice that her conduct was unconstitutional.

## IV. CONCLUSION

For the foregoing reasons, Sgt. Brown's motion for summary judgment is **GRANTED** on grounds of qualified immunity. Dkt. [30]. This action is **DISMISSED with prejudice**. Final judgment shall issue by separate entry.

The Court takes judicial notice that Armstead is now housed at Miami Correctional Facility.[5] The **clerk is directed** to update his address to reflect he is at that facility. The address is 3038 West 850 South, Bunker Hill, Indiana 46914. Because Armstead is at a facility that participates in the E-filing program, he remains enrolled in the E-Service Program.

**SO ORDERED**.

Date: 9/28/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

MARCUS A. ARMSTEAD
150169
MIAMI - CF
MIAMI CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All Electronically Registered Counsel

[5] INDIANA INCARCERATED DATABASE SEARCH, https://offenderlocator.idoc.in.gov/idoc-ofs-1.0.2/ofs?offnum=150169&search2.x=0&search2.y=0 (last visited Sept. 28, 2026).